UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
WASHINGTON D.C. DIVISION

**WINSTON JOHNSON**
       Plaintiff,                                 Case No.: 1:19-cv-1568

v.

**ROBERT L. WILKIE,** *Secretary*,
**DEPARTMENT OF VETERANS AFFAIRS,**
       Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL
## INJUNCTIVE RELIEF REQUESTED

Plaintiff, Winston Johnson, complains of Defendant, Robert L. Wilkie, Secretary, Department of Veterans Affairs, Office of Resolution Management as follows:

1. This court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, including 42 U.S.C. § 2000e-16 and 42 U.S.C. § -2000e-2(m), the Age Discrimination Statutes 29 U.S.C. § 623 and 29 U.S.C § 633a.

2. Plaintiff has complied with all jurisdictional prerequisites to action under Title VII of the Civil Rights Act of 1964 as amended including having exhausted his administrative remedies.

3. Office of Resolution Management (ORM) is the VA's liaison with the Department of Justice for external complaints filed against VA under Title VII of the Civil Rights Act of 1964 and other similar statutes, ORM has oversight responsibility for the processing of discrimination complaints and serves as the intake office for these complaints. ORM is divided into three regions. Plaintiff was located in Region II in the Southeast District, Saint Petersburg, FL and covered temporarily the Mid-Atlantic District[1] in Washington, D.C., Plaintiff (Sex-Male), (Race-Black),

---

[1] Currently known as the North Atlantic District I.

and (Age-now 65) was born in July 1953. Plaintiff had over 42 years of federal service after he entered the military at the age of seventeen where he rose from E-1 to E-4. He had been employed at the VA since August 1979, beginning as a Housekeeping Aid, GS-1. He became employed in ORM on May 22, 1998, as an EEO Counselor, GS-11. Plaintiff was a Field Manager, GS-14 for the Southeast District from August 22, 2007 to August 2014. On August 22, 2007, Plaintiff was promoted to Regional Officer of the Southeast Region (Region II). He was then promoted to Region II Director, GS-15 in August 2014. On December 17, 2012 Plaintiff assumed the role as Acting Regional EEO Officer of the Mid-Atlantic Operations (Region I) while continuing to perform his duties as the Regional EEO Officer for Southeast Operations-Region II. He continued to manage both roles until September 30, 2013, when Tabetha McFeders took over the Regional EEO Officer role for Mid-Atlantic District. In or about mid-2015 Tracey Therit became the Associate Deputy Assistant Secretary. Plainitff was constructively discharged and forced to retire on September 2, 2017. He is familiar with the facility's hostile work environment/harassment policies.

4. Harvey Johnson (Race-Black) is the Deputy Assistant Secretary of ORM. He started on or about October 1, 2016.

5. Tracey Therit (hereinafter Therit) (Sex-female) (Race-Caucasian) was one of Plaintiff's supervisor at material times. She was the Associate Deputy Assistant Secretary of ORM. She had held this position from mid-2015 until present and reported to Harvey Johnson, who was her direct supervisor.

6. Beginning in Spring of 2016 Plaintiff engaged in EEO activity in which he was, and was perceived by management to be, opposing discrimination when he refused to take down a (1993) photo taken at an official VA event, which he had in his office for 23 years. The photo

was of himself with three female, Caucasian Tampa Bay Buccaneer Cheerleaders. Therit said she was offended by the photo and that is was unwelcomed.

7. Plaintiff further engaged in EEO activity when he filed his EEO complaint and participated therein. Plaintiff filed an informal EEO claim based on hostile work environment-based Race (Black), Sex (Male), Age (then 63), and reprisal (prior EEO activity) in Case No. VA-0705-XX08-2017102946 on April 28, 2017. He then filed timely his formal complaint constituting twelve (12) claims on August 18, 2017. It was accepted for investigation on August 28, 2017. More than 180 days have passed since Plaintiff formally filed his formal complaint, thus satisfying the jurisdictional requirements of 42 U.S.C. 2000e- 16(c).

8. Each of the employees of the ORM as described herein were employed by the Defendant and were acting within the course and scope of his or her employment with the Defendant at the time of the conduct described herein. Each of the employees were there during the relevant times of this complaint.

## **GENERAL ALLEGATIONS**

9. In Spring 2016 Therit stated to Plaintiff that she was offended by the photo of Plaintiff with three Caucasian, Female Buccaneer Cheerleaders. Plaintiff explained the history behind the photo to Therit. It was taken at a VA event at the Tampa Veterans Administration Health Care System to honor veterans in 1993. Therit continued to express her objection. This was the first time in over 20 years that anyone made this objection.

10. On or around October 30, 2016 Plaintiff received a "Fully Successful" Performance Rating while his counterpart, Tami Press, Region 3 Director received an "Outstanding" Performance Rating with a monetary award. During Plaintiff's thirty-eight-year VA career he has earned 24 "Outstanding" Performance Ratings and was promoted from a GS-1 to the Director of

two major ORM Regions, and ultimately a GS-15. Since coming under Therit's leadership, Plaintiff had not received an ICARE award, non-monetary awards (of which she has given out dozens to people without Plaintiff's protected characteristics), or any other recognitions for his commitment and exemplary service to the VA. These actions were discriminatory toward Plaintiff because Therit intentionally applied inconsistent performance standards to Plaintiff in comparison to his Caucasian counterpart. Therit did not afford Plaintiff the same opportunities to receive awards or options to relocate as she did for Plaintiff's female, Caucasian counterpart.

11. On December 8, 2016 at ELI Civility training that Plaintiff, Therit and other managers attended, Therit said to Plaintiff "the picture." When Plaintiff inquired of Therit why she had an issue with the photo, Therit had trouble speaking, would not look at him, and then mumbled under her breathe "exploitation of women."

12. In December 2016 during a work Christmas party, Therit yelled "Winston, stop it!" as he danced with a colleague, Melissa Gilbert (Caucasian, Female).

13. On January 10, 2017, during a discussion of harassment in the workplace at an EEOC Director's meeting, Therit again said to Plaintiff "the picture." Plaintiff again inquired of Therit what her issue was with the photo. She could not articulate a nondiscriminatory reason for her behavior towards the picture. He asked her for a resolution, and she indicated the only acceptable resolution would be for Plaintiff to take the photo down. She stated that he should put a photograph of the cheerleaders with a veteran on his office wall instead, which would honor his participation. Plaintiff is a veteran himself with forty-two years of federal service. Plaintiff perceived this as an inappropriate, racist request, and opposed discrimination when he refused to take down "the picture" down.

14. On March 10, 2017 Therit issued Plaintiff a Proposed 14-Day Suspension[2] for Conduct Unbecoming of a Supervisor. Therit cited a Final Agency Decision (FAD) that had been rendered on a 2013 complaint that was filed. The FAD was issued on February 9, 2017 listing Plaintiff as one of the RMOs that was responsible for a per se violation of reprisal based on an alleged comment that, "Employees aren't hired to file EEO complaints, they are hired to service veterans." Plaintiff had evidence showing that this happened when he was giving a training class. He was citing to Agency-approved training material that had been in use for years as well as referring to the EEOC Management Directive 110 when he made the comment. When he provided this information to Therit, she refused to include it in the record before the deciding official, thus causing Plaintiff to be cited for a per se violation. Plaintiff was required to take a 4-hour EEOC training related to anti-retaliation provisions of federal EEO laws and regulations. The FAD also recommended that disciplinary action be considered using the VA Tables of Penalties. Therit proposed to discipline Plaintiff in a harsh manner and one that was inconsistent with other employees' disciplinary actions for a first-time per se violation. Furthermore, Therit incorrectly proposed to discipline Plaintiff under the GS-15 level Tables of Penalties instead of those for a GS-14.[3]

15. On March 24, 2017 Therit gave the Plaintiff a second strike, in his otherwise, highly successful forty-two-year career, when she issued Plaintiff an Admonishment, charging him with negligent performance of duties. Therit charged Plaintiff as the one responsible for an investigation of a complaint not being completed in a timely manner, resulting in a default judgment against the Agency. The 180-day regulatory requirement

---

[2] This action subjected Plaintiff to discipline for a concern that had already been effectively addressed in August 2013.
[3] Plaintiff was a GS-14 at the time the alleged comment was made and his GS-14 level was noted in the FAD.

to complete the case was due to expire on July 28, 2013. During this time the Centralized Investigation Division ("CID") did not have funding to assign work to contractors and the "pending investigations" inventory aged. An extension of time was granted in that case, however the number of days for the extension was not indicated. As an automatic function when the number of days is not specified, the system set a 30-day extension. Plaintiff had no oversight at this point on the matter, yet Therit still took disciplinary action against him. On August 19, 2013 the CID assigned the case to the Mid-Atlantic Operations for investigation. Plaintiff had oversight on this matter between August 19, 2013 and September 30, 2013. Tabitha McFeder assumed supervisory responsibilities for the assigned investigator and had oversight responsibility for processing the investigation in a timely manner beginning September 30, 2013. Although the assigned investigator handling the matter was under Plaintiff's supervision at the time the matter was *assigned* an investigator, Plaintiff had no role in the late assignment of the investigation nor the untimely completion of the investigation. Plaintiff only had oversight of this matter for forty-two (42) days. The suspension date of the matter was on November 19, 2013, which was well after Ms. McFeder assumed the responsibility.

16. On March 7, 2017 Therit sent an email to Perdita Johnson-Abercrombie, Tami Press and Plaintiff, identifying six employees that should be considered for discipline, (Charlotte Jones and Cheryl Campbell (no longer with Agency), Paul Crain, Joe DiBisceglie, Jim Jindra, and Plaintiff). Crain (Male-Black) was the CID Manager and the one responsible for assigning the case to an investigator. Jindra was the District Manager of the North Atlantic District. DiBisceglie was the assigned investigator of the matter. Therit never mentioned any responsibility of the supervisor McFeder. In the end Therit disciplined Plaintiff and no one else, despite the lack of evidence supporting negligence on Plaintiff's part.

17. On April 7, 2017, Harvey Johnson mitigated Therit's Proposed 14-day Suspension to a 7-day Suspension without pay. Johnson failed to identify any aggravating or mitigating factors in the Decision Letter when he considered past disciplinary actions and failed to apply the Douglas Factors appropriately. Johnson denied Plaintiff's request for a reprimand to reflect progressive discipline to resolve the situation. Furthermore, in direct retaliation for Plaintiff's EEO activity, management amended the Evidence File with aggravating evidence of a verbal counseling, a non-disciplinary action, that occurred years prior after Plaintiff was given the evidence file Proposal Letter and Therit refused to allow him to provide rebuttal evidence. Plaintiff was disciplined in a rushed and harsh manner that is inconsistent with how other employees who have committed far worse actions, and were never disciplined.

18. In or around April 2017 Plaintiff was verbally admonished by Therit after he quoted a Puerto Rican employee with limited English.

19. The Defendant's actions deliberately caused intolerable working conditions. On September 2, 2017, fearing that Therit was targeting him and was going to terminate him, Plaintiff was constructively discharged, resulting in Plaintiff's early retirement resulting in loss of pay.

20. Plaintiff was subjected to a hostile work environment based upon race (Black), sex (male), age (Over 40), and reprisal. The hostile work environment began after Plaintiff opposed management's request to take down a photo depicting Plaintiff alongside three Caucasian female cheerleaders. He opposed and was viewed as opposing discrimination and retaliation in filing and participating in his own EEO complaint.

## COUNT I
### Retaliation

21. Plaintiff sues Defendant, Robert Wilkie as Secretary of the Department of Veterans Affairs, for retaliation under Title VII.

7

22. Plaintiff incorporates and re-alleges paragraphs 1 through 21.

23. Plaintiff engaged in EEO activity which is protected under Title VII that included good faith opposition to unlawful discrimination as well as his participation in his EEO case involving management.

24. As alleged above, the Defendant was aware of the Plaintiff's protected EEO activities.

25. The disciplinary actions, harassment, and adverse employment actions taken against Plaintiff all followed the Plaintiff engaging in EEO activity. They are part of a pattern of material adverse actions, statements and antagonism against the Plaintiff. As alleged, the adverse actions include lower Performance Ratings, Admonishment, Suspension, and constructive discharge.

26. As alleged above, the aforesaid materially adverse employment actions, other adverse actions, misconduct, and other conduct, acts and omissions to the Plaintiff's detriment, were all taken (or failed to be taken) by administrators, managers, and supervisory personnel with the Agency as retaliation for the protected or EEO activity of the Plaintiff including those set forth above. In the alternative they were motivated by his EEO activity. They are the direct and proximate result of the EEO activity.

27. The Defendant, through the supervisors of the Plaintiff, has engaged in, directed, and/or ratified retaliatory conduct, and has frustrated the Plaintiff's efforts to obtain relief and intentionally maintained these retaliatory and unlawful practices to the detriment of its employees. The Defendant at all relevant times knew or should have known of the retaliatory actions being taken against the Plaintiff and failed to take necessary action to prevent or correct the retaliatory actions being taken and, in fact, ratified such conduct.

28. The Defendant, through acceptance of such conduct in this case, has fostered an attitude among administrators, managers and supervisors at the Agency that retaliation against employees in order to discourage protected EEO activity as an acceptable employment practice.

29. As a result of the foregoing, the Plaintiff has been constructively discharged and damaged. Such damages include, but are not limited to loss of pay; loss of benefits; payment of attorneys' fees and legal costs; loss of an amicable work environment; loss of professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

30. Plaintiff has satisfied all conditions precedent to the filing of this suit or have been prevented by the Defendant from satisfying such conditions or are excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## COUNT II
### Sex (Male), Race (Black), and Age (Over 40)

31. Plaintiff sues Defendant, Robert Wilkie as Secretary of the Department of Veterans Affairs, for discrimination on the basis of his sex (male), race (Black), and age (over 40).

32. Plaintiff incorporates and re-alleges paragraphs 1 through 21.

33. The suspension was part of material adverse actions, statements and antagonism against Plaintiff motivated by his sex, race, or age.

34. The Defendant, through the supervisors of the Plaintiff has engaged in, directed, and/or ratified discriminatory conduct, and has frustrated Plaintiff's efforts to obtain relief and

intentionally maintained these discriminatory and unlawful practices to the detriment of its employees. The Defendant at all relevant times knew or should have known of the discriminatory actions being taken against Plaintiff and failed to take necessary action to prevent or correct those actions and, in fact, ratified such conduct. In the alternative, they were motivated by discriminatory animus.

35. The Defendant, through acceptance of such conduct in this case and others, has fostered an attitude among administrators, managers and supervisors at the Agency that this discrimination against employees is an acceptable employment practice from those managers herein involved.

36. As a result of the foregoing, Plaintiff has been constructively discharged and damaged. Such damages include, but are not limited to loss of pay; loss of benefits; payment of attorneys' fees and legal costs; loss of an amicable work environment; loss professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

37. Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

# COUNT III
## Harassment and Hostile Work Environment

38. Plaintiff sues Defendant, Robert Wilkie as Secretary of the Department of Veterans Affairs, for harassment and hostile work environment based upon race, sex, age, and reprisal.

39. Plaintiff incorporates and re-alleges paragraphs 1 through 21.

40. The above harassment and hostile work environment engaged in by the supervisory personnel within the VA in order to harass the Plaintiff due to his EEO activity, or in the alternative was motivated by that activity and by sex, race, and/or age. Given the background of these actions and based upon all the conduct alleged, the Defendant at all relevant times knew, or should have known, of the above- referenced harassment and hostile work environment against the Plaintiff and that it was based upon his EEO activity or above-mentioned protected classes. The Defendant has failed to take necessary action to prevent or correct the harassment and hostile work environment and, in fact, ratified such conduct. The Defendant, through the Plaintiff's managers and supervisors has engaged in, directed or ratified conduct, and denied and frustrated the Plaintiffs' efforts to obtain relief. The Defendant, through acceptance of the complained of conduct within the department, has fostered an attitude among supervisors within the Agency that harassment and a hostile work environment are acceptable employment practices. Because of the willful actions of the Defendant and its administrators, managers and supervisors, or in the alternative because of actions motivated by EEO animus, and as a proximate cause thereof, the Plaintiff has been and will continue to be denied his rights to equal employment opportunity and constructively discharged.

41. As a result of the foregoing, the Plaintiff has been damaged. Those damages include, but are not limited to loss of pay; loss of benefits; loss of an amicable working environment; loss professional opportunities; payment of attorneys' fees and legal costs; harm to

their professional reputation; and humiliation, degradation, embarrassment, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer from these damages absent relief from this Court.

42. Plaintiff has satisfied all conditions precedent to the filing of this suit or have been prevented by the Defendant from satisfying such conditions precedent, or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees and costs, and such other relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## Count IV
## Injunctive Relief

43. Plaintiff sues Defendant, Robert Wilkie as Secretary of the Department of Veterans Affairs.

44. Plaintiff incorporate and re-alleges paragraphs 1-21, 22-31, 32-38 and 39-43.

45. Unless the above practices are enjoined, Plaintiff will suffer irreparable harm.

46. There is (1) a substantial likelihood of success on the merits; (2) irreparable injury that will be suffered unless an injunction is issued; (3) the threatened injury to the Plaintiff is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, will not disserve the public interest.

47. Plaintiff requests the Court award his attorneys' fees and costs and enter preliminary and permanent injunctions enjoining the following practices, actions and conduct:

a. Violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and 42 U. S. C. § 2000e *et seq*. as described above including retaliation against Plaintiff for protected or EEO activity and discrimination based on sex (male), race (black), and age (over 40).

b. Such other practices, actions or conduct that the court deems appropriate and proper to enjoin.

WHEREFORE, Plaintiff demand trial by jury of all issues so triable and such other and further relief as the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Joseph D. Magri*
Joseph D. Magri
Florida Bar No.: 0814490
Merkle & Magri, P.A.
5601 Mariner Street, Suite 400
Tampa, FL 33609
Tel.: (813) 281-9000
Fax.: (813) 281-2223
Email: jmagri@merklemagri.com