## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
## WASHINGTON D.C. DIVISION

**WINSTON JOHNSON**

   **Plaintiff,**        **Case No.: 1:19-cv-1568**

**v.**

**DENIS MCDONOUGH,** *Secretary*,
**DEPARTMENT OF VETERANS AFFAIRS,**

   **Defendant.**

_____/

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
## INJUNCTIVE RELIEF REQUESTED

  Plaintiff, Winston Johnson, complains of Defendant, Denis McDonough, Secretary, Department of Veterans Affairs, Office of Resolution Management as follows:

  1.  This court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, including 42 U.S.C. § 2000e-16 and 42 U.S.C. § -2000e-2(m), the Age Discrimination Statutes 29 U.S.C. § 623 and 29 U.S.C § 633a.

  2.  Plaintiff has complied with all jurisdictional prerequisites to action under Title VII of the Civil Rights Act of 1964 as amended including having exhausted his administrative remedies.

  3.  Office of Resolution Management (ORM) is the VA's liaison with the Department of Justice for external complaints filed against VA under Title VII of the Civil Rights Act of 1964 and other similar statutes, ORM has oversight responsibility for the processing of discrimination complaints and serves as the intake office for these complaints. ORM is divided into three regions. Plaintiff was located in Region II in the Southeast District, Saint Petersburg, FL and covered

temporarily the Mid-Atlantic District[1] in Washington, D.C., Plaintiff (Sex-Male), (Race-Black), and (Age-now 65) was born in July 1953. Plaintiff had over 42 years of federal service after he entered the military at the age of seventeen where he rose from E-1 to E-4. He had been employed at the VA since August 1979, beginning as a Housekeeping Aid, GS-1.  He became employed in ORM on May 22, 1998, as an EEO Counselor, GS-11.  Plaintiff was a Field Manager, GS-14 for the Southeast District from August 22, 2007 to August 2014.  On August 22, 2007, Plaintiff was promoted to Regional Officer of the Southeast Region (Region II). He was then promoted to Region II Director, GS-15 in August 2014.  On December 17, 2012 Plaintiff assumed the role as Acting Regional EEO Officer of the Mid-Atlantic Operations (Region I) while continuing to perform his duties as the Regional EEO Officer for Southeast Operations-Region II.  He continued to manage both roles until September 30, 2013, when Tabetha McFeders took over the Regional EEO Officer role for Mid-Atlantic District. In or about mid-2015 Tracey Therit became the Associate Deputy Assistant Secretary and Plaintiff's direct supervisor. Plaintiff was constructively discharged and forced to retire on September 2, 2017.  He is familiar with the facility's hostile work environment/harassment policies.

4.      Harvey Johnson (Race-Black) is the Deputy Assistant Secretary of ORM. He started on or about October 1, 2016.

5.      Tracey Therit (hereinafter Therit) (Sex-female) (Race-Caucasian) was one of Plaintiff's supervisor at material times. She was the Associate Deputy Assistant Secretary of ORM. She had held this position from mid-2015 until present and reported to Harvey Johnson, who was her direct supervisor.

---

[1] Currently known as the North Atlantic District I.

6.      Beginning shortly after Therit arrived and saw a photo on his wall, Plaintiff engaged in EEO activity in which he was, and was perceived by members of management to be opposing discrimination when he refused to take down a 1993 photo which he had in his office for 23 years. The photo had been taken at an official VA event.  The photo was of himself with three female, Caucasian Tampa Bay Buccaneer Cheerleaders. Therit said she was offended by the photo and that is was unwelcomed.

7.      Plaintiff further engaged in EEO activity when he filed his EEO complaint and participated therein. Plaintiff filed an informal EEO claim based on hostile work environment-based Race (Black), Sex (Male), Age (then 63), and reprisal (prior EEO activity) in Case No. VA-0705-XX08-2017102946 on April 28, 2017. He then filed timely his formal complaint constituting twelve (12) claims on August 18, 2017. It was accepted for investigation on August 28, 2017. More than 180 days have passed since Plaintiff formally filed his formal complaint, thus satisfying the jurisdictional requirements of 42 U.S.C. 2000e- 16(c).

8.      Each of the employees of the ORM as described herein were employed by the Defendant and were acting within the course and scope of his or her employment with the Defendant at the time of the conduct described herein.  Each of the employees were there during the relevant times of this complaint.

## GENERAL ALLEGATIONS

9.      When she first saw the photograph, Therit claims to have stated to Plaintiff that she was offended by the photo. The photo was of Plaintiff with three Caucasian, female Buccaneer cheerleaders.  Plaintiff explained the history behind the photo to Therit.  It was taken at a VA event at the Tampa Veterans Administration Health Care System to honor veterans in 1993. The event was an annual event to celebrate and show appreciation for the veterans. The cheerleaders had

regularly come to the event.  Therit continued to express her objection.  This was the first time in over 20 years that anyone made this objection. Therit not only made clear her concerns with the picture to Plaintiff, but she also voiced her concerns to Harvey Johnson on more than one occasion.

10.     The photograph displayed a black man (Plaintiff) with three white women. With regard to Plaintiff's reasonable belief not only did he disclose that belief to H. Johnson, but to Dr. Daniel Malloy who was in charge of the Business Office.  He also disclosed it to retired Colonel Davis. Our independent investigation involving former ORM officials established that numerous other witnesses will testify to that fact. Not one witness, other than Therit, felt the picture was insensitive or inappropriate in the work place. It was taken at a VA facility during an annual program to celebrate and show appreciation to veterans. Davis not only testified that the Plaintiff had a reasonable belief Therit's repeated conduct involved racial discrimination, he explained his understanding of the basis of the belief.  Both had grown up in the deep South, although the Plaintiff was even older than he, and experienced this type of treatment especially in relation to a white woman. Therit became the Plaintiff's direct supervisor in 2015.  Given the repeated unsupported and unfair actions Therit took against this highly respected and well-liked employee in his last years of a celebrated career with the VA, Davis believes he was the victim of racial discrimination.  Dr. Malloy shared this belief. He testified Therit had problems with black males and targeted them. He and other black males believe she was racist. He testified she made his job and that of other black males more difficult and often injected herself into their jobs without direct authority to do so.  He believed she created HWEs for black males and himself. She also failed to give them credit for work they performed. The Plaintiff was an especially visible and highly respected leader who was black. He received the treatment Dr. Malloy and Davis testified to an in all these ways.

11.     The Office of Employment Discrimination Complaint Adjudication Guidelines (VA-003425; H. depo p. 45:1-21), state that complaints of retaliation for prior EEO activity can include prior EEO activity that involves "some other activity in opposition to unlawful discrimination" defining opposition as:

> "…"Opposition" activity encompasses protests, demonstrations, or· other forms of verbal or non-verbal opposition <u>to actions or conduct believed in good faith</u> to be discriminatory, including discrimination against persons other than the complainant. The opposition activity must be lawful and <u>reasonable;</u> -*i.e.,* it must not be destructive of social or business interests, or otherwise jeopardize a stable and productive work environment. To be protected, the complainant must have a reasonable, good-faith belief that. the practice being opposed is unlawful. As long as the belief is reasonable, Title VII protections will apply, even if the practice being opposed ultimately proves to be lawful."

H. Johnson admitted his Agency recognized and applied this definition. In considering opposition the Plaintiff engaged in protected EEO activity when he opposed what he reasonably believed to be discriminatory and retaliatory actions and conduct taken against him in violation of Title VII. H. Johnson and Therit would have known that.

12.     Therit, Dr. Malloy, Davis and H. Johnson corroborated the Plaintiff by testifying he expressed distress that Therit repeatedly brought it up.  As mentioned, H. Johnson said she brought it up to him and he discussed her concerns with the Plaintiff more than once. One of those times was before his suspension was announced.

13.     Therit's other actions included yelling at Plaintiff to stop dancing with a white woman in a room full of high-ranking, and other, ORM employees. Therit admitted doing that but claimed it was because the Plaintiff's body was "very close, if not touching the body of the female employee" [a white employee who had asked him to dance] and was completely inappropriate. That is not only denied by the Plaintiff but by numerous other witnesses to the event.

14.     In light of the totality of the circumstances, Plaintiff had a good faith reasonable

belief that Therit's actions were in violation of Title VII. Plaintiff's communications to Therit, the Deputy Director, H. Johnson and other managers of his opposition to taking down the photograph explicitly or implicitly conveyed his opposition to perceived discriminatory actions. That opposition was protected EEO activity as recognized in definitions used by ORM and applicable to federal employees. Under guidelines applicable to ORM, Plaintiff understood his conduct was opposition and Therit and H. Johnson knew it too.

15.     In addition to repeatedly criticizing the picture and ostracizing the Plaintiff in front of his co-workers, Therit gave ORM managers the ability to recognize the reasonableness of the Plaintiff's belief because she unfairly took further discriminatory actions. The harassment continued for nearly two years if one accepts Therit's claim she first told him about her objection to the picture being in his office earlier on. But it escalated as she was unable to make him remove it despite repeated statements to him and H. Johnson. Therit disparately evaluated him, embarrassed him at an official function and proposed a 14-day suspension against Plaintiff for using a statement contained in Agency-approved training material during a training class. Therit knew this fact but failed to disclose it to the deciding official, H. Johnson. Indeed, during her deposition she was shown the power point presentation and acknowledged knowing the two employment attorneys who prepared the power point presentation the Plaintiff used. She admitted to working with one in the federal government. These two are prominently identified in the power point presentation they developed and the Plaintiff used. Naturally, that presentation contains the exact language for which the FAD found a *per se* violation. It also contains a similar statement directly from an Equal Employment Opportunity Commission's manual (MD110), used by Administrative Judges.  Therit, however, not only withheld that information from H. Johnson, in her deposition she claimed Plaintiff never told her these facts while also claiming she never

received his response to his proposed suspension.  She was unable to think of any reason he would not have told her about these facts. The Plaintiff testified he not only told her these facts but asked her to request the OEDCA to allow him to supplement the record with this evidence before OEDCA made its finding. There will be testimony from other ORM officials that this supplementation of the record was an available procedure for someone in her position. However, she refused to supplement the record and to even consider it when disciplining him. The stressful events relating to these events and the ultimate suspension continued for 3 months up through and to the suspension.

16.     On or around October 30, 2016 Plaintiff received a "Fully Successful" Performance Rating while his counterpart, Tami Press, Region 3 Director received an "Outstanding" Performance Rating with a monetary award.  During Plaintiff's thirty-eight-year VA career he has earned 24 "Outstanding" Performance Ratings and numerous "exceptional" ratings as he was promoted from a GS-1 to the Director of two major ORM Regions, and ultimately a GS-15. Plaintiff was known to be an exemplary employee over his near 40-year career, who rarely missed a day and was one of the last employees to leave, committed, "friendly" and "approachable", and a "gold star" employee.  Since coming under Therit's leadership, Plaintiff had not received an ICARE award, non-monetary awards (of which she has given out dozens to people without Plaintiff's protected characteristics), or any other recognitions for his commitment and exemplary service to the VA.  These actions were discriminatory toward Plaintiff because Therit intentionally applied inconsistent performance standards to Plaintiff in comparison to his Caucasian counterpart. The Plaintiff and other managers have testified to the Plaintiff's well-known work ethic throughout the VA.  Davis, Dr. Malloy and others have and will testify to this.  He put in long hours, never refused helping others, took on other work, did special projects well and had the

best performance measures of the three Regional Directors. This was not happenstance; it was his long-time approach. He often received ratings higher than fully successful such as excellent and outstanding before Therit came on. For a Regional Director, Davis testified timely closure of investigations was the most important measure. The Plaintiff's region always had the best closure rates.  Tami Press, a white Regional Director, was given an outstanding rating by Therit (the highest) her region's timely closure rate was 50%. That same year Perdita-Abercrombie-Johnson, a black female, had a 70% rate and the Plaintiff had an 80% rate.  However, they only received a fully successful. Therit did not afford Plaintiff the same opportunities to receive awards or options to relocate as she did for Plaintiff's female, Caucasian counterpart.  As a result of Plaintiff's downgraded performance appraisal, his pay was negatively affected and he lost bonuses.

17.     On December 8, 2016 at ELI Civility training that Plaintiff, Therit and other managers attended, Therit said to Plaintiff "the picture."   When Plaintiff inquired of Therit why she had an issue with the photo, Therit had trouble speaking, would not look at him, and then mumbled under her breathe "exploitation of women."

18.     In December 2016 during a work Christmas party, Therit yelled "Winston, stop it!" as he danced with a colleague, Melissa Gilbert (Caucasian, Female).  Therit admitted to doing this and claimed Plaintiff was dancing inappropriately.  This incident was observed by several other witnesses, all of which deny that Plaintiff dancing inappropriately.

19.     On January 10, 2017, during a discussion of harassment in the workplace at an EEOC Director's meeting, Therit again said to Plaintiff "the picture."  Plaintiff again inquired of Therit what her issue was with the photo.  She could not articulate a nondiscriminatory reason for her behavior towards the picture.  He asked her for a resolution, and she indicated the only

acceptable resolution would be for Plaintiff to take the photo down.  She stated that he should put a photograph of the cheerleaders with a veteran on his office wall instead, which would honor his participation. Plaintiff is a veteran himself with forty-two years of federal service. Plaintiff perceived this as an inappropriate, discriminatory request, and opposed discrimination when he refused to take the picture down.

20.     Plaintiff discussed his concerns with the Deputy Director, Harvey Johnson regarding Therit's issue with Plaintiff.  Harvey Johnson admitted that Plaintiff expressed that he [Plaintiff] believed Therit's issue with him may be based on Plaintiff's skin color.  Harvey Johnson admitted that he was familiar with the picture that hung in the Plaintiff's office that depicted the Plaintiff and Buccaneer cheerleaders. He admitted to being aware of the Plaintiff's and Ms. Therit's feelings about the picture.   Therit expressed to Harvey Johnson that she did not like the picture hanging in there. Harvey Johnson discussed with the Plaintiff, Therit's concerns with the picture on more than one occasion. At a meeting with Harvey Johnson, Plaintiff advised that he did not plan on taking the picture down.

21.     Several other management officials witnessed the Plaintiff suffered from disparate treatment by Therit based on Plaintiff's race and refusal to remove the picture. Furthermore, the Director of the Business Office and former Army Colonel Archibald Davis, a supervisor who is directly under H. Johnson, described Therit as hostile to black males, often interfering in their work, even without her having direct line authority over them, and creating a hostile work environment for the Plaintiff, as well as, for other black males.  Several management officials provided testimony during depositions supporting that Plaintiff had a reasonable belief Therit was racially discriminating against him and was creating a hostile work environment for Plaintiff as well as, for other black males.   Other high-ranking employees observed Therit bully Plaintiff.

22.     On March 10, 2017 Therit issued Plaintiff a Proposed 14-Day Suspension for Conduct Unbecoming of a Supervisor. This action subjected Plaintiff to discipline for a concern that had already been effectively addressed in August 2013 by his then supervisor, Charlotte Jones. Several witnesses believe that Therit's disciplinary actions taken against Plaintiff were extreme measures and did not consider his career.  Therit cited a Final Agency Decision (FAD) that had been rendered on a 2013 complaint that was filed. While all other intentional claims were rejected, the FAD was issued on February 9, 2017 listing Plaintiff as one of the RMOs that was responsible for a per se violation of reprisal based on an alleged comment that, "Employees aren't hired to file EEO complaints, they are hired to service veterans."  Plaintiff had evidence showing that this happened when he was giving a training class. He was citing to and reading Agency-approved training material that had been in use for years as well as referring to the EEOC Management Directive 110 when he made the comment.  When he provided this information to Therit, she refused to include it in the record which went to ODECA, thus causing Plaintiff to be cited for a per se violation. She also refused to provide it to H. Johnson.

23.     From a due process standpoint, Therit considered a second incident as a basis for the proposed discipline, but she did not identify it in her proposal for a suspension or the evidence file and never notified the Plaintiff about it.  Therit admitted Plaintiff's forwarding a cartoon about Osama Bin Laden was used as evidence to support the suspension, however, it was used without telling the Plaintiff. This happened in 2007, ten years before, with no reoccurrence. It also was a violation of Plaintiff's VA due process rights for her to have considered a second offense without telling the Plaintiff. It was also a violation to have communicated with the suspension decision maker, H. Johnson, about matters related to the suspension. In fact, Therit told the Plaintiff the suspension would be reduced from 14 to 7 days before the Plaintiff ever met with H. Johnson and

received the suspension. In the FAD Plaintiff was required to take a 4-hour EEOC training related to anti-retaliation provisions of federal EEO laws and regulations.  The FAD also recommended that disciplinary action be considered using the VA Tables of Penalties. Therit proposed to discipline Plaintiff in a harsh manner and one that was inconsistent with other employees' discipline for a first-time per se violation.  Furthermore, Therit incorrectly proposed to discipline Plaintiff as a GS-15 level instead of a GS-14.  Plaintiff was a GS-14 at the time the alleged comment was made and his GS-14 level was noted in the FAD.

24.     The deciding official, Harvey Johnson, admitted he never documented the Douglas Factors, nor documented what he considered as mitigating or aggravating evidence.  He admitted that Therit advised him that the cartoon incident should be considered a "second offense" as a basis for a Suspension because Plaintiff had sent and "off-color" comic via email to another employee.

25.     H. Johnson has admitted that he was the deciding official in taking disciplinary action against the Plaintiff, however he was given an evidence file to review from Therit. He also admitted he did not document the Douglas Factors, nor what he considered as mitigating or aggravating evidence. H. Johnson, who was new at the Agency, did not follow the appropriate Douglas factor policies with regard to determining whether to take disciplinary action against Plaintiff, and claims to be unaware of what, if any, evidence the Plaintiff had been given as part of the Evidence File. The HR supervisor of employee and labor relations (ER/LR), the department that advises management officials on discipline and other matters, testified the only three documents in the evidence file were (1) the FAD; (2) the GS-15 position description; and (3) Prevention of Workplace Harassment/NO FEAR training certificate, dated January 27, 2015. She testified to the importance of actually analyzing the

Douglas factors. She testified it was her typical practice to review the relevant facts and recommend discipline which would be appropriate. She could not recall what happened here. The Plaintiff spoke to the HR person at the time who told him Therit proposed it and would not change it. Therit admitted the key part of that when she testified, she made the 14-day suspension proposal, and claimed ER/LR did not make an objection so she went with it.

26.     H. Johnson admitted that at the beginning of the meeting with the Plaintiff to discuss the proposed suspension, the Plaintiff brought up the cheerleader photo issue, but H. Johnson dismissed it as it being a "mute point for this." He denied a due process violation of speaking to Therit, but did reduce the suspension to seven days and gave a statement to the investigator of the Plaintiff's EEO that he considered the alleged earlier events Therit testified she learned from another employee and used to justify his suspension decision. Thus, knowledge of Plaintiff's belief the picture was involved is admitted. It is also admitted that the proposing official and the deciding official considered an aggravating alleged first offense they did not tell the Plaintiff they were considering.

27.     Therit also proposed the discipline considering him as a GS-15 instead of the applicable GS-14 he was in 2013 and definitely not the GS level he was in 2007 or when Charlotte Jones talked to him in 2013. Again, the evidence file only included three documents: the FAD; his position description; and Prevention of Workplace Harassment/NO FEAR training certificate, dated January 27, 2015. Therit testified she believed it was important to take action because of his current position, but this happened before that. The slide was removed four years before and no similar event had occurred since.

28.     Almost immediately after the proposed suspension, Therit disciplined Plaintiff with an admonishment for conduct for which he had no direct involvement while not admonishing the

person(s) responsible for a failure to timely complete an investigation during the seven months prior to the event causing the admonishment or the month and a half after the failure and before a default occurred. The Plaintiff and other witnesses will establish that managers at Plaintiff's level are not disciplined because of the conduct of subordinate employees multiple levels below him, let alone people who were not under his supervision at the critical times. The proposed suspension, the evidence file and the decision never discussed any other *per se* violation with a similar penalty, and the Plaintiff told Therit the proposed discipline was much harsher and inconsistent than other disciplinary actions for first time *per se* offenders. This information was known to many in ORM including the Plaintiff. Dr. Malloy and Davis testified to that and other witnesses will agree. We received copies of all *per se* violations penalties decisions on January 13, 2021 in discovery and none are greater than a reprimand even in more severe cases than this one. Most seemed to be non-disciplinary counseling, or, as here, there was direction to consider discipline.  The Plaintiff, Dr. Malloy, Davis and others knew of this disparate treatment and described it as evidence of her discriminatory and retaliatory animus.  On March 24, 2017, Therit gave the Plaintiff a second strike in his otherwise highly successful forty-two-year career, when she issued Plaintiff an Admonishment, charging him with negligent performance of duties. Therit charged Plaintiff as the one responsible for an investigation of a complaint not being completed in a timely manner, resulting in a default judgment against the Agency. The 180-day regulatory requirement to complete the case was due to expire on July 28, 2013. During this time the Centralized Investigation Division ("CID") did not have funding to assign work to contractors and the "pending investigations" inventory aged.  An extension of time was granted in that case, however the number of days for the extension was not indicated.  As an automatic function when the number of days is not specified, the system set a 30-day extension. Plaintiff had no oversight at this point

on the matter, yet Therit still took disciplinary action against him. On August 19, 2013 the CID assigned the case to the Mid-Atlantic Operations for investigation.  Plaintiff had oversight on this matter between August 19, 2013 and September 30, 2013.  Tabitha McFeder assumed supervisory responsibilities for the assigned investigator and had oversight responsibility for processing the investigation in a timely manner beginning September 30, 2013.   Although the assigned investigator handling the matter was under Plaintiff's supervision at the time the matter was *assigned* an investigator, Plaintiff had no role in the late assignment of the investigation nor the untimely completion of the investigation. Plaintiff only had oversight of this matter for forty-two (42) days. The suspension date of the matter was on November 19, 2013, which was well after Ms. McFeder assumed the responsibility.

29.     On March 7, 2017 Therit sent an email to Perdita Johnson-Abercrombie, Tami Press and Plaintiff, identifying six employees that should be considered for discipline, (Charlotte Jones and Cheryl Campbell (no longer with Agency), Paul Crain, Joe DiBisceglie, Jim Jindra, and Plaintiff). Crain (Male-Black) was the CID Manager and the one responsible for assigning the case to an investigator.  Jindra was the District Manager of the North Atlantic District. DiBisceglie was the assigned investigator of the matter. Therit never mentioned any responsibility of the supervisor McFeder. In the end Therit disciplined Plaintiff and no one else, despite the fact the upper-level supervisors are not disciplined for conduct of lower-level employees which they did not know about. Moreover, there was a lack of evidence supporting negligence on Plaintiff's part.

30.     On April 7, 2017, Harvey Johnson mitigated Therit's Proposed 14-day Suspension to a 7-day Suspension without pay.  Johnson failed to identify any aggravating or mitigating factors in the Decision Letter when he considered past disciplinary actions and failed to apply the Douglas Factors appropriately.  Johnson denied Plaintiff's request for a reprimand to reflect progressive

discipline to resolve the situation. Furthermore, in direct retaliation for Plaintiff's EEO activity, management amended the Evidence File with aggravating evidence of a verbal counseling, a non-disciplinary action, that occurred years prior after Plaintiff was given the evidence file Proposal Letter and Therit refused to allow him to provide rebuttal evidence.  Plaintiff was disciplined in a manner that is inconsistent with how other employees who have committed far worse actions, and were never disciplined.  Several other employees testified during deposition that they had never heard of any other employee being disciplined in the manner Plaintiff was for a *per se* violation.

31.     In or around April 2017 Plaintiff was verbally criticized by Therit after he lightly quoted a Puerto Rican employee with limited English.

32.     The Defendant's actions deliberately caused intolerable working conditions. The Plaintiff was a highly motivated employee that had a spectacular rise from the lowest wage grade maintenance worker to a GS-15 over an entire ORM region of the country.  He was a proud veteran and someone committed to the anti-discrimination laws. Therit targeted him for nearly two years before his retirement, depicting him as someone who was a contradiction of the actual man, willfully violating VA due process rules and unfairly punishing him. These actions went from personal attacks to ostracism, devaluation and discipline which not only violated his due process rights, but disproportionately punished him all while giving him multiple strikes in a step discipline process. On September 2, 2017, fearing that Therit was targeting him and was going to terminate him, Plaintiff was constructively discharged, resulting in Plaintiff's early retirement resulting in loss of pay.

33.     Plaintiff was subjected to a hostile work environment based upon race (Black), sex (male), age (over 40), and reprisal. The hostile work environment began when Therit saw a picture of the Plaintiff with three white women on his wall and escalated when he refused to take it down.

After Plaintiff opposed management's request to take down a photo depicting Plaintiff alongside three Caucasian female cheerleaders, he was opposing and was viewed as opposing discrimination. His race played a prominent part in this and other actions.

34.     Plaintiff has satisfied all conditions precedent to the filing of this suit or have been prevented by the Defendant from satisfying such conditions or are excused under the law from satisfying any other conditions.

**Count I**
**Retaliation**

35.     Plaintiff sues Defendant, Denis McDonough as Secretary of the Department of Veterans Affairs, for retaliation under Title VII.

36.     Plaintiff incorporates and re alleges paragraphs 1 through 34.

37.     Plaintiff engaged in EEO activity which is protected under Title VII that included good faith opposition to what he reasonably believed was unlawful discrimination as well as his participation in his EEO case involving management.

38.     As alleged above, the Defendant was aware of the Plaintiff's protected EEO activities.

39.     The disciplinary actions, harassment, and materially adverse employment actions taken against Plaintiff all followed the Plaintiff engaging in EEO activity.  They are part of a pattern of material adverse actions, ostracism, statements, antagonism and discipline against the Plaintiff.  As alleged, the materially adverse personnel actions include lower Performance Ratings, Admonishment, Suspension, and constructive discharge.

40.     As alleged above, the aforesaid materially adverse employment actions, and other conduct, acts and omissions to the Plaintiff's detriment, were all taken (or failed to be taken) by administrators, managers, and supervisory personnel with the Agency in retaliation for the

16

protected or EEO activity of the Plaintiff including those set forth above. In the alternative they were motivated by his EEO activity and such EEO activity was considered in making these materially adverse personnel decisions. They are the direct and proximate result of the EEO activity.

41.     The Defendant, through the supervisors of the Plaintiff, has engaged in, directed, and/or ratified retaliatory conduct, and has frustrated the Plaintiff's efforts to obtain relief and intentionally maintained these retaliatory and unlawful practices to the detriment of its employees. The Defendant at all relevant times knew or should have known of the retaliatory actions being taken against the Plaintiff and failed to take necessary action to prevent or correct the retaliatory actions being taken and, in fact, ratified such conduct.

42.     The Defendant, through acceptance of such conduct in this case, has fostered an attitude among administrators, managers and supervisors at the Agency that retaliation against employees in order to discourage protected EEO activity as an acceptable employment practice.

43.     As a result of the foregoing, the Plaintiff has been damaged including being constructively discharged.  Such damages include, but are not limited to loss of pay; loss of benefits; payment of attorneys' fees and legal costs; loss of an amicable work environment; loss of professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and emotional distress.  Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

44.     Plaintiff has satisfied all conditions precedent to the filing of this suit or have been prevented by the Defendant from satisfying such conditions or are excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## COUNT II
### Sex (Male), Race (Black), and Age (Over 40)

45.     Plaintiff sues Defendant, Denis McDonough as Secretary of the Department of Veterans Affairs, for discrimination on the basis of his sex (male), race (Black), and age (over 40).

46.     Plaintiff incorporates and re-alleges paragraphs 1 through 34.

47.     The suspension, admonishment, lower evaluations were part of personnel actions, statements and antagonism against Plaintiff motivated by his sex, race, or age. Sex, race and/or age were considered in the process of making these personnel decisions.

48.     The Defendant, through the supervisors of the Plaintiff has engaged in, directed, and/or ratified discriminatory conduct, and has frustrated Plaintiff's efforts to obtain relief and intentionally maintained these discriminatory and unlawful practices to the detriment of its employees.  The Defendant at all relevant times knew or should have known of the discriminatory actions being taken against Plaintiff and failed to take necessary action to prevent or correct those actions and, in fact, ratified such conduct. In the alternative, they were motivated by discriminatory animus.

49.     The Defendant, through acceptance of such conduct in this case and others, has fostered an attitude among administrators, managers and supervisors at the Agency that this discrimination against employees is an acceptable employment practice from those managers herein involved.

18

50.    As a result of the foregoing, Plaintiff has been damages and ultimately constructively discharged. Such damages include, but are not limited to loss of pay; loss of benefits; payment of attorneys' fees and legal costs; loss of an amicable work environment; loss professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress.  Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

51.    Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## COUNT III
### Harassment and Hostile Work Environment

52.    Plaintiff sues Defendant, Denis McDonough as Secretary of the Department of Veterans Affairs, for harassment and hostile work environment based upon race, sex, age, and reprisal for EEO activity.

53.    Plaintiff incorporates and re-alleges paragraphs 1 through 34.

54.    The above harassment and hostile work environment engaged in by the supervisory personnel within the VA in order to harass the Plaintiff due to his EEO activity, or in the alternative was motivated by that activity and by sex, race, and/or age. In the alternative, such discrimination was a factor in the personnel actions taken and the harassment and hostile work environment. Given the background of these actions and based upon all the conduct alleged, the Defendant at all relevant times knew, or should have known, of the above- referenced harassment and hostile

work environment against the Plaintiff and that it was based upon his EEO activity or above-mentioned protected classes.  The Defendant has failed to take necessary action to prevent or correct the harassment and hostile work environment and, in fact, ratified such conduct.  The Defendant, through the Plaintiff's managers and supervisors has engaged in, directed or ratified conduct, and denied and frustrated the Plaintiffs' efforts to obtain relief.  The Defendant, through acceptance of the complained of conduct within the department, has fostered an attitude among supervisors within the Agency that harassment and a hostile work environment are acceptable employment practices. Because of the willful actions of the Defendant and its administrators, managers and supervisors, or in the alternative because of actions motivated by race, age or animus to EEO activity or race, age or EEO activity was a factor considered in the hostile work environment which is a personnel action under federal law and as a proximate cause thereof, the Plaintiff has been and will continue to be denied his rights to equal employment opportunity and constructively discharged.

55.     As a result of the foregoing, the Plaintiff has been damaged.  Those damages include, but are not limited to loss of pay; loss of benefits; loss of an amicable working environment; loss professional opportunities; payment of attorneys' fees and legal costs; harm to his professional reputation; and humiliation, degradation, embarrassment, and severe emotional suffering and distress.  Plaintiff will continue in the future to suffer from these damages absent relief from this Court.

56.     Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions precedent, or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees

and costs, and such other relief as this Court deems just and proper and for a trial by jury on all issues so triable.

**Count IV**
**Injunctive Relief**

57.     Plaintiff sues Defendant, Denis McDonough as Secretary of the Department of Veterans Affairs.

58.     Plaintiff incorporate and re-alleges paragraphs 1-34, 35-44, 45-51 and 52-56.

59.      Unless the above practices are enjoined, Plaintiff will suffer irreparable harm.

60.     There is (1) a substantial likelihood of success on the merits; (2) irreparable injury that will be suffered unless an injunction is issued; (3) the threatened injury to the Plaintiff is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, will not disserve the public interest.

61.     Plaintiff requests the Court award his attorneys' fees and costs and enter preliminary and permanent injunctions enjoining the following practices, actions and conduct:

a.      Violating Title VII of the Civil Rights Act of 1964, and 42 U. S. C. § 2000e *et seq*. including 42 U.S.C. § 2000e-16 and 42 U.S.C. § -2000e-2(m), and the Age Discrimination Statutes 29 U.S.C. § 623 and 29 U.S.C § 633a.

b.      Such other practices, actions or conduct that the court deems appropriate and proper to enjoin.

WHEREFORE, Plaintiff demand trial by jury of all issues so triable and such other and further relief as the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

21

Respectfully submitted,


***/s/   Joseph D. Magri***
Joseph D. Magri
D.C. Bar No. 349191
Merkle & Magri, P.A.
5601 Mariner Street, Suite 400
Tampa, FL 33609
Tel.: (813) 281-9000
Fax.: (813) 281-2223
Email: jmagri@merklemagri.com